v. Savannah College of Art and Design, Inc. 22-11556. Ms. Noble, when you are ready, you may approach the podium. And I see that you have three minutes for rebuttal, and you may proceed when you are ready. May it please the Court, Ellen Noble for Appellant. This case is about whether Isaac Payne, a former Marine who served as the head fishing coach at the Savannah College of Art and Design, may be precluded from vindicating his federal statutory right to work free from race discrimination and retaliation. The briefs address a number of issues as to why the College's arbitration agreement with Mr. Payne is unenforceable. But I hope to focus today on the agreement's provision requiring the non-prevailing party to pay the arbitrator's Ms. Noble, let me just right off the bat ask you, is Mr. Payne's race discrimination and retaliation argument meritorious? Yes, Your Honor, but also, I mean, I think So if it — I assumed you would say that. How does that not completely undercut the argument that he is likely to incur costs from the arbitration because only the loser pays? Two points, Your Honor. First, as cited by Mr. Payne and provided in the proceedings below, employment discrimination claims do not fare well in arbitration. He presented a study to the court that about 2.5 percent overlooking at jams in AAA over a five-year period actually got — To import that statistic, which I don't know what underlies that study, import that statistic into this case because, as you've just told me, your client's claims are meritorious. Perhaps all of those were not. I think it's reasonable to take into account statistics like that that may exist regardless of Mr. Payne's belief that his case is meritorious. And second, as I'd like to address more in depth, I don't think it's right for the standard to be that he has to prove that it's likely he's going to lose. I think instead the proper inquiry is whether or not he's established that there are such prohibitive costs that would deter him or any reasonable person from pursuing their — trying to vindicate their statutory rights. But that runs headlong into Muznik. I don't think it does, Your Honor, and I — and for a few reasons. First, in Muznik, you didn't have any kind of evidentiary showing regarding the cost of — You're 100 percent right about that. But in Muznik, we said — it's actually pretty extraordinary the way it's written. It says — it says exactly what you say, which is pretty vague, the evidence. And then we have this section which says, we could send this thing back for more evidence like we have here, but we don't think we need to do that because there is no record that could be made at this point. Your Honor, that argument in Muznik was reliant on the fact that they believe it could just be reviewed by the court on the back end. Well, I will agree with you that that is one reason why we said that. There's no doubt about that. But that is not the only reason why we said that. And our case law on abrogation is such that for us to acknowledge that the Supreme Court has abrogated one of our prior precedents, we've said it must completely demolish in all ways all avenues in which we got there. And it seems to me that for that holding there, there were a lot of avenues we had to get there. One was the one you mentioned, review. But we also that you could bring up the enforceability problem with the arbitrator itself. In other words, the arbitrator has jurisdiction to deal with this very issue of whether this provision is appropriate or not, and that's one avenue. The other is we cited specifically for the basis of judicial review that the agreement allowed for judicial review, which happens here as well. We also said that there's simply no evidence in the record, like you said, of the plaintiff showing in that case that his claim was unlikely. So all of those things were true. A few points, Your Honor, to take those — each of those factors. The first is whether the arbitrator could decide this issue. First, I don't think that's right when the court here found that the enforceability of those provisions are a question for the court to decide and then proceeded to make a decision on the question of enforceability of that provision. So I think it's very unlikely the arbitrator is going to say, this is unenforceable. You could have brought that up in a court. It hasn't been brought up. It's not been brought up in a pre-review about enforceability. In other words, if we're — if the court is saying that enforceability is an issue for the court, not the arbitrator, you could have raised this as an enforceability issue beforehand. We have raised this issue as an enforceability issue. Right. We ruled against you on that. And now we're appealing that legal question. I'm just responding to your point that I don't think that the arbitrator can go and fix this issue now at this stage. And I think your second point, that the contract provides for judicial review on the back end, it says, according to the law. And this Court has already held that legal error or manifest disregard for the — for the law are no longer grounds for vacating. So according to the law, there is no judicial review that could happen on the back end. But I think the most important point here is that no arbitration is going to happen. Because Mr. Payne has said he's not going to arbitration because he can't take on that risk. And I don't think you can look at Mucinich independent of the factual circumstances where there was no showing that that plaintiff could not go to arbitration or would not — would be effectively precluded from pursuing arbitration. But we said that it didn't matter. I mean, that's the problem. In fact, what we said was whether he will, in fact, incur those fees depends entirely on whether he prevails in the arbitration. He has to make that showing first as a predicate for us to make the finding of whether it's likely to incur or not. I think that's a second reason why it's distinguishable. Because here we have presented evidence as to why he thinks there is a very strong probability, a likelihood of actually losing. That evidence didn't exist in Mucinich. What evidence is that? He states to — he provides studies about — Judge — Judge Branch is right. All that means is that there's a lot of frivolous claims out there when people bring employment discrimination claims. That doesn't mean anything about whether his claim is not. Apparently, I've read the allegations. He seems to have really great claims. I think it's probative evidence as to probability. And most importantly, it speaks to whether or not it's reasonable for him to be deterred from pursuing arbitration at all. And I think this Court — Can I say something? How is that? If lots of people are bringing these, how does that mean that he's discouraged when lots of people are bringing these? I think — There are 10,000 people who brought employment discrimination claims. How is that evidence that he's discouraged when lots of people are doing exactly what he is set out to do? When I say discouraged, I mean that the relevant question that this Court should be asking is whether the risk of incurring the potential cost of arbitration is great enough to deter the plaintiff from bringing his — his statutory claims. And that risk analysis has to take into account both the probability and magnitude of the harm. But isn't there always a risk in litigation? I mean, there's a risk that you're going to lose whether you arbitrate or whether you go to court. And both are costly. Absolutely, Your Honor. But here we're talking about arbitration fees. And at no point in court are you going to be asked to pay the salaries of the judges or the salaries of the jury. And I think it's completely fair to say that he needs to show there's something unique to arbitration here that becomes a prohibitive cost. And I think he has made that evidentiary, showing through both a financial declaration and the expert declaration, talking about the type of arbitration that this type of proceeding would have and the kind of cost that that would incur that are additional to and would not occur if he pursued his claims in court. That's just the nature of these claims, though. There are lots of statutes that have two-way fee-shifting provisions in which somebody would be required to pay in Federal court. In addition, there are plenty of rules which have — for discovery violations, for frivolous and vexatious claims, that fee shift. So it's — there's a risk of fee shifting no matter what. That's absolutely correct, Your Honor. But that's — that's not — our argument is not contingent on that. This Supreme Court held in — I know that Judge Berger's point is the risk goes both ways. Why — there's a likelihood of something happening in litigation, and there's a likelihood of something happening in arbitration. Why — why is one okay, but one is not okay? Because the Supreme Court held in Greentree that the existence of large arbitration costs could preclude a litigant from effectively vindicating their Federal statutory rights. So the question is, is there something unique happening in arbitration that creates a prohibitive cost that they wouldn't confront in court? And here, you have arbitrator fees, not attorney fees provisions, which would not be imposed on any party if they had gone into court. And you have analysis talking about — from Mr. Payne's, and he understands if he went to court, he would be subject to some costs at attorney's fees, and that he — he would take on those costs. But this goes too far. Don't you — don't the parties split ADR costs in Federal court for mediation, for example? I mean, I think it can depend on certain circumstances, but mediation is also much less costly, I think. I don't doubt that. But it's — it's still required in most Federal courts that I know of to go to mediation before you go through the process. You're required to pay that fee. Why does that not fall within the same sort of hoop-jumping that you're talking about here? There's no — no doctrine that says it has to be free to bring a claim in court, right? That's fine, that there are some going to be costs to bring claims at times. The question under the effective indication doctrine is, is there something unique when you have an arbitration agreement that's adding something additional? And here, there's an evidentiary showing of that. There was no dispute of this evidence. No counter-evidence was proposed. And they've made an initial evidentiary showing of a likelihood of prohibitive costs. And to your point, I think it's important to note that in Randolph, in Greentree, sorry, that they never said it had to be likely that the plaintiff would incur prohibitive fees, only that the plaintiff needed to present evidence showing the likelihood as a — You're not wrong about Greentree. But the problem is we — Musnick is our sort of gloss on Greentree. And we're stuck with Musnick. I think — you know, this Court held in Anders that the holdings of a prior decision can reach only so far as the facts and circumstances presented to the Court in the case which produced that decision. And here, there's — there are a series of circumstances. The lack of evidentiary showing of any costs. The lack of evidentiary showing that they're likely to lose. And the fact that the Court's reasoning was based on outdated bad case law. There is a fact that a court cannot hold anything beyond the facts of the case. But there's any number of ways to reach a holding. Some can be done really narrowly based on the facts, and some can be done really broadly. And in Musnick, for whatever reason — I didn't write it. I wasn't on the panel. I wasn't even an attorney at the time it came out. The — Musnick said — it went broad. It said, we could send this back, but there is no reason to send this back because there's no evidentiary showing that could be made. — Your Honor, I — I don't think that was the sole reasoning. I think that the reasoning in — in Musnick when it made that claim was because why not just do it on the back end? And here, you've got two reasons why that can't be true anymore. One, Hall Street. And two, a very robust showing and claim — the claim wasn't even there in Musnick that he can't — he's not going to go to arbitration. There will be no back end. There will be no analysis on the back end because he's never going to pursue his claims. — But Musnick — the language in Musnick that — that Judge Luck is emphasizing and reemphasizing is that it is so broad, it is — and it's not suggesting, it is saying, at this point, plaintiff has not been assessed with any fees, nor is it certain than he — that he ever will be. So I — I get that we now have evidence in the record of what you say are the costs and why these would be prohibitive. You still haven't addressed my opening question of if you think the claim — his claim is meritorious, how do you not run headlong into Musnick? So I don't think uncertainty — the fact that there's some uncertainty creates a problem. The problem in Musnick was that it was entirely speculative. And I think a helpful hypothetical here — I can wrap up. I scam over time — is what if the contract says something like the loser will have to pay a million dollars if they lose, right? No reasonable person would pursue their statutory rights under that circumstance, even if there's only a 30 percent chance that they lose the case. And that's why deterrence has to take into account the risk analysis, which is both probability and magnitude. That's what the Sixth Circuit has done. That's what the Fourth Circuit recognized in — in Bradford. That's what the Tenth Circuit held in Schenkel. Other circuits have held that. Thanks so much. All right. And you have reserved three minutes for rebuttal. Sears. All right. Good morning, Your Honors. I'm Leah Sears, and I represent SCAD. This is yet another arbitration dispute in which the parties are litigating whether or not they should be litigating, even though they agreed to arbitrate. The district court correctly found that the cost-shifting provision, as well as the process of selecting an arbitrator, were not unconscionable. If, however, this Court believes that any of these provisions pose a problem, we ask that the Court sever the offending sections and allow the case to proceed to arbitration as agreed to by the parties. Now, I'll start with the cost-saving provision. Payne argues, as you just heard, that the cost-saving provision tenders the entire agreement unconscionable and is, therefore, unenforceable. And he's wrong. She's wrong. Sorry. Cost-shifting in contracts today is common, and in Georgia, an arbitration agreement is not enforceable merely because it may involve some fee-shifting. Under Misnick, is there any situation in which a pre-arbitration challenge to a cost-shifting provision would prevail? That, you know, that — Or, I guess, just to clarify, is cost-shifting in this arbitration context per se speculative so that a challenger can never prove they are likely to incur costs? Your Honor, Musnick and Greentree and all of those, Escobar after Musnick, keep saying it's a case-by-case basis. So I don't know about any ever, forever — So she ended — With the 11 — Counsel that it — loser pays a million dollars. Where are we in that situation? I don't know. But I do know — I really just don't know, Your Honor. But I do know that in this case, this lies squarely under Musnick. Now, I have 10 reasons why Mr. Payne hasn't met his burden on this issue. And the first one is what — what Judge Locke was talking about. SCAD — well, it's not, actually. SCAD is responsible for advancing the cost of the arbitrator's fees. And as such, Payne hasn't been denied access to the arbitral forum. The second one is what Judge Locke was talking about. I'm not sure the first one matters, though, if he did somehow show likely to incur. In other words, just because you advance the cost, but he's likely to foot the bill at the end. Okay. I'm not sure that that matters. Let me ask you this about — about Musnick, because this is — this is my question. Their argument is, and it has some merit to it, that because in Hall Street and our cases following Hall Street, that there is no judicial review, as I understand it, in these circumstances, then a big chunk of the reason for Musnick of why it didn't matter what the evidence — the state of the evidence was, was because at the end of the day, some court somewhere would be able to look at this and see what happened or not. And now that's gone. Understood, Your Honor. But uniquely in this case, there is going to be a second bite at the apple, because they have a second arbitrator from which they can appeal the first arbitrator's decision. Yeah. But if they're unlike — if they've already lost, I mean, that's — If they've lost, they can go to the second arbitrator, who could vacate the decision of the first arbitrator. So — Still bear — but also bear the cost of the second arbitration. Also bear the cost, but also get that vacated. So they do have a chance, just like it's not in a judicial form. But if they appeal it and they lose, regardless, the contract says, loser pays the fee. That's pretty — that's pretty clear. So where is — where's the — where do they get to — under Hall Street, where do they get to go back and then argue that the fee was unreasonable? Or that, you know, it precluded their ability to arbitrate? And where do they get to go back and contest the fee amount? Well, they've already had two bites at the — I mean, it's like going to the high court. At some point, there's an end to it. That, you know, and you don't just keep getting to go back and say that the fee is unreasonable. Maybe the second arbitrator doesn't award the fee. And I arbitrate all the time. I know that that happens, even notwithstanding with the contract. Would the evidence — If they — I'm sorry, Your Honor. Would the kind of evidence that a plaintiff would have to show would be essentially what Judge Branch was asking? Would they have to present an expert to say his claim is really unlikely to succeed if he goes to arbitration? They could do that. But they also don't want to show, which is the case in this case, that he makes $105,000 a year, and his wife is also working, and his house cost rent is $3,636 a month and all that. But he — yet, in his declaration, he says, I don't want to use my savings. He doesn't say, I don't have the money. He says he just doesn't want to use his savings. I don't want to use mine, either. Let me ask you this. And I think you touched on this at the beginning, but I want to flesh it out. Let's assume everything the plaintiff is saying is right. Muznick is no longer good law. They've established that it's a likelihood of success based on the statistics they have there. And it's going to cost them $40,000 if they go through with the arbitration. Is that — is that unconscionable under Georgia law? No. It — that doesn't shock the conscience. I think one of you mentioned, and it could have been you, Judge Law. I talk the most, so it might have been — Okay, fine. Okay. But in most arbitrations, you only pay half. You're going to pay half anyway. So if — and then, by the way, in this case, you're only paying for the arbitrator's fees, not the expert's, not the attorney's fees. I am not an expert on Georgia law, and I have some experts in this room right now. Okay, okay. But it seems to me that — that the standard is that no person would sign this — it is so unreasonable, this contract, so outside the norm — Right, yeah, that would shock the conscience. — that no person would sign this thing. Right. And that's not this. I mean, that is not this case where — even if it were — if the arbitrator's fees were 48, you'd be already responsible for 42. What — something else he hasn't done is an analysis which some of the cases — not in this circuit, but there's a Fourth Circuit case and another Sixth Circuit case — it seems to be suggesting that you have to compare the differential in litigation costs with the litigation in arbitration. Even paying the arbitrator, litigation may be far more expensive than arbitration, even if you have to bear those costs. We don't know that in this case. It's very speculative. He just hasn't carried the burden of proof. So, I mean, he has not his — it's speculative because of what Mucinich says. It's speculative based on his income. You know, I know he wants to have other children, and that's going to cost him and all that, but he's got a pretty high salary here, and — and, by the way, he might prevail. So what if he does prevail? He believes in his case, he might prevail, and then he doesn't have to pay anything if he feels that way. Oh. Can I ask you about the selection of arbitration clause? The selection of the arbiter clause? Yes. I have to say, I don't know that — I'm not — again, I am no expert in arbitration, but I don't know that I've seen this one before like this. The argument that — that the plaintiff is making here is essentially — and I — they can correct me if I'm wrong — that while it has the veneer that we can sort of mutually select this person, in reality, you've sort of preselected who you want as an arbitrator by limiting the universe of people who could possibly serve. Why is that argument wrong? It's wrong, Your Honor, because it's not limited to Article III judges. It's — it includes federal magistrates. They say there's still only two in Georgia. Two in Georgia. Right. But not in the United States. And the clause itself does not limit it. I mean, like, look at Rick Dean. I don't know if — there are other people, even African Americans, who can come in and serve this. The clause does not limit it to federal — retired federal judges in Georgia, correct? No. And it doesn't — the clause doesn't limit it to retired federal judges who happen to work for one of two mediation services? Absolutely. So you're not just looking at AAA. You don't have to look at just jams. People these days could get on a plane, do it all the time, and fly to Seattle and arbitrate. Okay. You could approach Rick Dean. You could approach Beverly Martin and ask if they would be willing to serve. Absolutely. And you're not entitled to — I know he's an African American. You're not entitled to an African American. He argues that, too. And also, if you can't find a federal judge, you can — the arbitration agreement says that you can look for other retired — look for other arbitrators who have the five years experience in employment. And suppose, for argument's sake, that the entire universe of potential arbitrators included only two white men. Does that make the provision unconscionable? In the United States or wherever? If — that's not this case, of course. Right. Okay. But they've argued there are only two white men. In the world. And let's just assume — Who can handle this case. Let's just assume, for whatever — Okay. Whatever parameters you want to establish, there is a pool. So we don't have zero. Got it. But it's only two white men. Does that make this provision unconscionable? I would have way more concerns. Do you agree with their argument that — I would have way more — that is not their case, because the universe is much larger. Excuse me. Do you agree with their argument that arbitration is in the nature of a jury, because there is a fact-finding function? And as a fact-finder, they're entitled to some cross-section of the community in which the arbitration is brought? Well, I do believe — you're talking about Batson and — That's their argument. That's their argument. Does — not really. I think arbitration is a lot more complicated than that. I don't think arbitrators are not just jurors. It's a lot more complicated than that. In other words, they're more like judges. More like judges. And you're not entitled to — But not exactly like judges. I'm going to tell you, okay? But more like judges than juries. I mean, juries — well, I'm not going to — And there's no Batson sort of jury pool right to — Not that I know of. Not on the state level or on the federal level. Not at Georgia. Not that I know of. Not anywhere. If there are no further questions — I'm happy to answer. One last question on the remedy issue. So where you started was even if we find the fee-shifting provision to be unconscionable, the remedy here is to sever that provision, correct? Yes. And you'd be okay with that? SCAD would be okay with that? Yes. It's a distinct provision. Sever it. But what I am — what I want to see happen, Your Honors, is this case has been pending for too long. It needs to be arbitrated. We need to get it resolved. Just delaying, delaying, delaying by getting it in federal court is ridiculous. I want to see the case — But you're saying we would sever if it's unconscionable. You're not suggesting we should just sever. Oh, no, no, no. I'm saying if — I urge you to sever nothing, okay? But if you find something unconscionable, sever it. Don't destroy the entire agreement. He signed the acknowledgment, okay? He agreed to this. He should be bound by this. At some point — this assumes a lot, obviously, but he's brought — the plaintiff here has brought a number of unconscionability claims regarding varied provisions within the agreement. Yeah. And his argument is that if we find some or a lot of them to truly be unconscionable, that we really shouldn't reward by severing those because essentially it encourages an employer to sort of put these little — little seeds in here and — with the hope that someone isn't going to challenge them. That — those — I think what you're talking about is the symmetries between the — you know, the arbitration procedural manual and the — Well, there's a number of them. He brings two separate procedural unconscionability claims, one regarding mutuality, one regarding indefiniteness, and then he brings the substantive ones regarding both the cost — the cost-shifting provision and the arbitrator-selected provision. But, yeah, but if — I really love the Caley case, C-A-L-E-Y, written by Judge Hull, who talks about all the minor, sort of insignificant deals in a contract and how they should be construed. They wouldn't be unconscionable. None of them are unconscionable. They just should construe them against SCAD and keep moving on. You know, and she — she says just keep moving on. Arbitrate it. I appreciate your time. Are there any other questions? I'm not trying to give up my 51 seconds. All right. Thank you very much for your time and attention. Thank you. Appreciate it. Ms. Noble, you have three minutes. Your Honors, if this Court is concerned about mucinic, it doesn't need to address that issue. It can — it doesn't need to make the holding under the Federal Effective Vindication Doctrine. It can make it under unconscionability law, under Georgia law. There are Georgia law cases that recognize this doctrine but don't have this language in mucinic that's concerning you. So Freeman, for example, 253 G.A. 698, embraces the notion that the statute of limitations effectively the holding of green tree but without this language that's concerning you in mucinic. And then in Crawford, they specifically talked about how if there was a showing — this is the Georgia Supreme Court — if there was a showing of evidence that someone was prohibited from being able to pursue their statutory rights, that that would have been sufficient. But in that case, there wasn't a sufficient evidentiary showing. So this — Why is the remedy not, especially if we're focused in on this being the worst of the provisions? Why is the remedy not to sever? The remedy is not to sever because Georgia law strongly disfavors severability, particularly in contexts where — Not where there's a — it doesn't seem that's the case where there's a severability provision. I don't think that's right, Your Honor. So, first of all, in Richard Rita, a Supreme Court — Georgia Supreme Court decision, they spent a long time making the argument that you just made, that courts should reject blue-pencil theories of severability because it incentivizes employers to include unlawful provisions. I understand that the blue-penciling concern that existed under Georgia law, that law has dramatically changed. That used to be courts don't blue-pencil employment agreements. And that law is not the law in Georgia anymore. Yes, Your Honor. But still applying Georgia law, courts of the Northern District of Georgia and Canyon have said that that's still a concern in the employment context when, one, it involves an essential term of the arbitration agreement where you would have to engage in rewriting substantive obligations of the parties, which is true here, and, two, where this Court would have to — where there's evidence that the employer was trying to create a one-sided, employer-friendly forum. And I think that refers back to the policy argument that the Supreme Court recognized way back in that Rita — in Richard Rita case, and that there are subsequent cases in the Georgia Supreme Court, like Purcell, where they said, notwithstanding the severability clause in the contract, you know, and then applying that same rationale. So I think severability is disfavored here for those reasons, both because it's an essential aspect, this provision is. So if you get rid of it, who's going to pay for the arbitration, right? And otherwise, you have to write in an obligation that neither party may have agreed to. Look, both — typically, without this provision, both parties are responsible for the cost of the arbitrator. I mean, isn't it — aren't we really looking at what is — what is half as opposed to what the total amount would be? Your Honor, I don't think that's right. So AAA and JAMS are the two mainstream arbitrators, and they have the employer paying the cost of arbitrators' fees. So I don't think half is the proper comparison, and we just haven't had an opportunity  to do that. And if we strike it and it's silent, then isn't it up to the arbitrator? I think that creates a lot of uncertainty. I mean, you're taking a circumstance in which we've provided certainty and imbuing it with speculation and indefiniteness, which I — Because of your litigation decision. Because of your decision to litigate this. I don't think it's our — I think because it's an unenforceable contract under some —  — unconscionability law. Sure. And I think the cure to that is to say that it's not on us or to invalidate the entire contract. And that's an argument for why the whole contract needs to fall, because otherwise you're just inserting indefiniteness into the contract, which could create new issues. Thank you. Thank you. Thank you both. We have your case under advisement, and court is adjourned. Thank you.